## Case No. 2,113.

BUFFUM et al. v. OAKLAND MANUF'G CO.

[4 Ban. & A. 599.] [1]

Circuit Court, D. Maine. Nov., 1879.

PATENTS—GUTTER MACHINE—INFRINGEMENT.

Upon the construction given by the court to reissued patent, No. 6,675, granted to complainant October 5th, 1875, for a machine for making gutters for buildings (the original patent having been dated July 25th, 1871, and numbered 117,255), the defendants held not to have infringed.

[In equity. Bill by A. K. P. Buffum and others against the Oakland Manufacturing Company to restrain infringement of letters patent No. 117,255, issued July 25, 1871, to complainants, and reissued October 5, 1875, and numbered 6,675, for a machine for making gutters for buildings. Bill dismissed.]

William Henry Clifford, for complainants.
A. H. Strout, for defendants.

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

LOWELL, Circuit Judge. This case has been very ably argued, and its decision depends entirely upon conflicting testimony, which, as printed in the record, I have examined with a great deal of care. The original patent, No. 117,255, dated July 25th, 1871, was granted to the plaintiff Buffum for a machine for making gutters for buildings. The specification is clearly drawn, and describes a series of revolving cutters of various forms, adapted to making a complete gutter from a stick sawed to dimension. The cutter which gouges or grooves the gutter comes up through the bed of the machine, and is brought into position by means of a lever, which raises it until it is stopped by a nut which regulates the depth of the cut. This is the first operation. Other cutters successively take effect and mould the bottom of the gutter (which is the top of the stick as it lies in the machine) into the required shape, and smooth or plane it. The last cutter planes what are called the "lips" of the gutter, that is to say, the edges on each side of the trough. The claim was for the whole machine; and such a machine was and is in use by the plaintiffs at Gardiner, Maine.

The defendants have their place of business in Gardiner, and appear to have been acquainted with the machine and with the patent of the plaintiffs. They built and now operate a machine which omitted the last planing cutter of the plaintiffs' original patent, and thus evaded the only claim. The plaintiffs thereupon reissued their patent, and now sue on reissue No. 6,675, dated October 5th, 1875, in which Buffum describes the same machine as before, but lays more stress upon its ability to make gutters with closed ends, and claims: "1st. The rotary cutter-stock R, with its cutters to form the groove of the gutter, in combination with the inclined frame S, to operate as herein described and for the purposes set forth. 2d. The combination of this part with that which moulds the bottom of the gutter at one operation of the machine. 3d. and 4th. The combinations which make up the entire machine." The defendants do not infringe the third and fourth claims, for they plane one side of their stick before putting it into the machine; but they do use a gouging cutter with an inclined frame in combination with cutters for moulding the bottom of the gutter at one operation of the machine. They bring their gouging cutter into connection with the stick by screws and not by a lever, and cannot operate the cutter without stopping the feed of their machine. This lever of the plaintiffs' has the power to bring the gouging cutter in contact with the stock, and to take it away again instantly.

The defendants insist that the claim of the original patent expresses exactly what the patentee discovered, a machine for making a gutter by means of a combination or aggregation of devices for moulding, gouging and planing by a continuous operation; that there were machines capable of making gutters with closed ends, and actually used for that purpose, long before 1871, which anticipate the first and second claims of the reissued patent if they are so construed as to include the operations of the defendants' machine, and that the reissue must, therefore, be limited to the third and fourth claims, which agree substantially with the original claim for the whole machine, and such specific improvements, if any, as Buffum may have made in the gouging cutter, and its instantaneous operation, which they allege is not infringed by their machine. The defendants further insist that the reissued patent was not obtained to correct a mistake or inadvertence, but simply to make new claims which might stop their machine. This may have been the motive; but with that the court has nothing to do. The question here is, whether the invention was of such a nature that the reissue is justified. The fact that the original claim was for the whole machine may have some bearing upon the state of the art, as understood by the inventor, at that time; but the machine described being the same, claims may be made to include whatever was the actual invention, if and so far as the patentee was the first to invent it. The case, therefore, depends upon the evidence in the record on the point of novelty.

It is testified by witnesses on both sides, that planing and grooving machines in great variety were in common use before the year 1871; that some of them had cutters arranged to work from below, as well as from above; that one of these, called the "Gray & Woods Planer," had been used for making gutters with stopped ends. But in this machine the moulding and planing were not done at the same time that the gutter was cut, and, as to its mode of feeding the material through the machine, it differed specifically from the class of machines to which both of those in this case belong. The Gray & Woods machine, therefore, did not anticipate the combination of the plaintiffs' second claim; and not even the first, if that should be construed to include the mode of feeding. The Myers machine was a well-known moulding machine, and gutters with stopped ends might be cut out on that machine. I think the evidence proves that such gutters were made on that machine at the mill of Houston & Pierce, in South Boston, many years before the plaintiff Buffum made his invention. Three witnesses so testify for the defendants. Four witnesses for the plaintiffs, who were employed in that shop, say they did not see such gutters made there, excepting on the Gray & Woods machine. But two of these witnesses, who are perhaps the most important of the four, from their means of knowledge, had given affidavits in the motion for a preliminary injunction, in which they swear that such gutters

had been made in that mill on that machine. They now explain that when they swore to gutters with stopped ends, they intended to speak, or to be understood as speaking, of gutters with one end stopped. Their affidavits will not fairly bear that interpretation; and if they would, it does not help the case of the complainants, because, if one end could be made in that way, the other might be. But this consideration does not affect my decision, as I hold it to be proved that gutters with both ends stopped were made on the Myers machine at South Boston before 1871. That machine had a cutter which worked from below, though it was not the cutter which made the trough of the gutter.

In this state of the art, the plaintiffs cannot claim broadly, under the first claim, any gouging cutter arranged in such a way as to make gutters with closed ends; but must be confined to the specific improvement which their assignor invented, and that improvement is not infringed. The defendants do not use the lever and stop, but screws which are like the apparatus of the Gray & Woods planer, and are a slight and well-known variation of the screws of the Myers machine. That machine contained, in like manner, the combination of the second claim, if that is to be broadly construed. The Myers machine was not as valuable for making gutters as the machines in this case, because of its small size; but it could and did make marketable gutters, within certain limits of size, substantially in the mode of the defendants' machine and substantially like the patented machine, in so far as the defendants' is like the plaintiffs'. Bill dismissed with costs.